Rick Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAUREN CHANG, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>BLISSY, LLC,<br><br>*Defendant*. | Case No. 8:25-cv-02132-MRA-JDE<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Jury Trial Demanded |

## Table of Contents


I. Introduction....1

II. Parties....4

III. Jurisdiction and Venue....4

IV. Facts....5

- A. Defendant's fake sales and discounts....5
- B. Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts....16
- C. Defendant's advertisements are unfair, deceptive, and unlawful....20
- D. Defendant's advertisements harm consumers....22
- E. Plaintiff was misled by Defendant's misrepresentations....23
- F. Defendant breached its contract with and warranties to Plaintiff and the putative class....31
- G. No adequate remedy at law....32

V. Class Action Allegations....33

VI. Claims....34

- First Cause of Action: Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq....34
- Second Cause of Action: Violation of California's Consumer Legal Remedies Act (By Plaintiff and the California Subclass)....37
- Third Cause of Action: Violation of California's Unfair Competition Law....39
- Fourth Cause of Action: Breach of Contract....42
- Fifth Cause of Action: Breach of Express Warranty....44
- Sixth Cause of Action: Quasi-Contract/Unjust Enrichment....45
- Seventh Cause of Action: Negligent Misrepresentation....46
- Eighth Cause of Action: Intentional Misrepresentation....47

VII. Relief....48

## I. Introduction.

1. Advertised "sale" prices are important to consumers. Consumers are more likely to purchase an item if they know that they are getting a good deal. Further, if consumers think that a sale will end soon, they are likely to buy now, rather than wait, comparison shop, and buy something else.

2. While there is nothing wrong with a legitimate sale, a fake one—that is, one with made-up regular prices, made-up discounts, and made-up expirations—is deceptive and illegal.

3. Section 17500 of California's False Advertising Law prohibits businesses from making statements that they know or should know are untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it actually is not.

4. Moreover, section 17501 of California's False Advertising Law provides, "[n]o price shall be advertised as a former price … unless the alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501. So, in addition to generally prohibiting untrue and misleading fake discounts, it also specifically prohibits advertising a former price that was not the prevailing price in the prior three months.

5. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised," and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

6. Additionally, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off of that price. 16 C.F.R. § 233.1(a). They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that

falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.2(a).

7. As numerous courts have found, fake sales violate these laws. And, they also violate California's general prohibition on unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

8. Defendant Blissy LLC ("Defendant" or "Blissy") manufactures, markets, and sells Blissy-branded products, including online through the Blissy website, www.blissy.com ("Blissy Products" or "Products").

9. Defendant advertises purported regular prices and purported limited-time sales offering steep discounts from those listed regular prices. Defendant consistently promotes "Up to 25% Off" with a constant stream of promotions. As soon as one ends, the next one immediately begins. Here are some examples:



10. Defendant also attempts to add a sense of urgency with statements like "Ends Tonight" or by adding a timer that counts down the hours, minutes, and seconds remaining in the promotion so the customer won't "Miss These Deals!":




11. But once the countdown timer reaches zero, the deal does not end. Blissy simply adds a new countdown timer, and a new false message that the sale "Ends Tonight!" Far from being time-limited, the discounts on Defendant's Products are always available. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are always available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited time—quite the opposite, they are always available.

12. As described in greater detail below, after reviewing Defendant's website, www.blissy.com, and seeing and relying on advertised sales, Plaintiff bought Products from Defendant. When Plaintiff made her purchases, Defendant advertised that a purported sale was going on, and Plaintiff believed that she was being offered steep discounts from the purported regular prices that Defendant advertised. And based on Defendant's representations, Plaintiff believed that she was purchasing Products whose regular prices and market values were the purported list prices that Defendant

advertised, that she was receiving substantial discounts, and that the opportunity to get those discounts was time-limited. These reasonable beliefs caused Plaintiff to buy from Defendant.

13. The representations that Plaintiff relied on, however, were not true. The purported regular prices Defendant advertised were not the true regular prices at which Defendant usually sells the Products. The purported discounts were not true discounts, and the sales were ongoing—not time-limited. Had Defendant been truthful, Plaintiff and other consumers like her would not have purchased the Products, or would have paid less for them.

14. Plaintiff brings this case for herself and other customers who purchased Blissy Products from Defendant.

## II. Parties.

15. Plaintiff Lauren Chang is domiciled in Irvine, California.

16. The proposed class includes citizens of every state.

17. Defendant Blissy LLC is a limited liability company organized under the laws of Delaware that maintains its principal place of business at 3900 W. Alameda Ave., 12th Floor, Burbank, California 91505. It is a citizen of Delaware and California. See 28 U.S.C. § 1332(d)(10) (in a class action "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized").

## III. Jurisdiction and Venue.

18. This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5,000,000, exclusive of interest and costs, and the matter is a class action in which one or more members of the proposed class are citizens of a state different from Defendant.

19. The Court has personal jurisdiction over Defendant because Defendant sold Blissy Products to consumers in California, including to Plaintiff.

20. Venue is proper under 28 U.S.C. § 1391(b)(1), 28 U.S.C. § 1391(c)(2), and 28 U.S.C. § 1391(d) because Defendant is subject to personal jurisdiction in this District with respect to this action, and would be subject to personal jurisdiction in this District if this District were a separate state, given that Defendant sold Blissy Products to consumers in California and this District, including to Plaintiff. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of Defendant's conduct giving rise to the claims occurred in this District, including Defendant's sale to Plaintiff.

## IV. Facts.

### A. Defendant's fake sales and discounts.

21. Defendant Blissy manufactures, distributes, markets, and sells Blissy-branded Products ("Products"). Blissy sells its Products directly to consumers, including through its website, www.blissy.com.

22. Defendant creates the false impression that its Products' regular prices are higher than they truly are.

23. At any given time, on its website, Defendant advertises steep discounts on its Products. These discounts always offer "up to X%" off the listed regular prices that Defendant advertises. Even though in truth these discounts run in perpetuity, Defendant claims they are limited time. Defendant changes the names of its various promotions but the discounts offered are consistently available. Here are some of the promotions that Defendant runs on its webpage:




24. In addition to the attention-grabbing banners like those shown above, Defendant lists the discount prices for its Products alongside the listed regular prices appearing in strikethrough font. Example screenshots are provided below and on the following pages:




*Captured November 26, 2023*




*Captured June 16, 2024*




*Captured August 13, 2025*

25. Defendant represents that these discounts will only be available for a limited time, but in reality, they continue indefinitely. For example, as depicted above, Defendant represented that it was offering a sale for "Back to School." To reasonable consumers, this means that shortly after the beginning of school, Defendant's Products will no longer be on sale and will retail at their purported regular price. Defendant further reinforces this concept with Statements like "Sale Ends Tonight" or by including a countdown timer. But the sales do not end, and the purported regular prices do not return.

26. Instead, Defendant keeps offering the discount pricing and simply changes the name of the sale. For example, after enough time has passed so that a “Back to School” sale no longer makes sense, Defendant simply changes the name of the promotion. In this case, Defendant changed it to “Blissy’s Fall Sale.” But the sale remains the same. It includes the same discounted strikethrough pricing and the same “25% OFF.” And remarkably, each day of the sale includes same false “Sale Ends Tonight” statement alongside the same false countdown timer:




*Captured September 17, 2025*

27. Using these tactics, Defendant leads reasonable consumers to believe that Defendant's sales are only available for a limited time, but, as shown above, they continue constantly, and are continuously replaced by similar sales. The list (or strike-through) prices Defendant advertises are not actually Defendant's regular prices, because Defendant's Products are consistently available for less than that. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all.

28. To confirm that Defendant consistently offers discounts off purported regular prices that are automatically applied to all orders, Plaintiff's counsel performed an investigation of Defendant's advertising practices using the Internet Archive's Wayback Machine (available at www.archive.org)[1] and screen captures from the www.blissy.com website. That investigation confirms that Defendant's sales have persisted continuously. For example, 105 screenshots of Defendant's website, www.blissy.com, were captured on the Wayback Machine, from dates between October 2021 and August 2025. This includes screenshots captured on 10/14/2021; 10/23/2021; 11/28/2021; 12/22/2021; 12/31/2021; 1/19/2022; 3/5/2022; 4/2/2022; 5/2/2022; 6/26/2022; 7/20/2022; 8/14/2022; 9/12/2022; 10/4/2022; 11/11/2022; 12/12/2022; 1/31/2023; 2/6/2023; 2/21/2023; 3/28/2023; 4/8/2023; 4/24/2023; 5/29/2023; 6/1/2023; 7/29/2023; 7/31/2023; 8/1/2023; 8/21/2023; 8/31/2023; 9/13/2023; 9/20/2023; 10/2/2023; 10/11/2023; 10/14/2023; 10/16/2023; 10/28/2023; 10/29/2023; 10/30/2023; 11/4/2023; 11/6/2023; 11/17/2023; 11/20/2023; 11/21/2023; 11/22/2023; 11/25/2023; 11/26/2023; 11/27/2023; 11/28/2023; 11/29/2023; 11/30/2023; 12/6/2023; 12/7/2023; 12/10/2023; 12/11/2023; 12/12/2023; 12/14/2023; 12/15/2023; 12/16/2023; 12/17/2023; 12/20/2023; 12/28/2023; 12/29/2023; 12/30/2023; 1/5/2024; 1/6/2024; 1/10/2024; 1/11/2024; 1/12/2024; 1/13/2024;

[1] The Internet Archive, available at archive.org, is a library that archives web pages. https://archive.org/about/

1/18/2024; 2/1/2024; 2/5/2024; 2/22/2024; 2/27/2024; 2/28/2024; 2/29/2024; 3/1/2024; 3/21/2024; 4/3/2024; 4/15/2024; 5/31/2024; 6/16/2024; 6/25/2024; 7/4/2024; 7/31/2024; 8/7/2024; 8/28/2024; 8/30/2024; 9/2/2024; 9/11/2024; 9/30/2024; 10/14/2024; 11/27/2024; 12/2/2024; 12/26/2024; 1/15/2025; 2/9/2025; 3/25/2025; 4/9/2025; 5/6/2025; 6/16/2025; 7/18/2025; 7/30/2025; 8/13/2025; and 8/14/2025.

29. Of the 105 randomly selected screenshots of Defendant's website captured on the Wayback Machine, all 105 (i.e. one hundred percent) displayed a purportedly time-limited discount on Defendant's Products. And one hundred percent of them displayed the purported discounted prices alongside the purported regular prices shown in strikethrough font in substantially the same manner as depicted above in paragraphs 24 and 26 above. Blissy's promotions run continuously, and its discounts are effectively permanent.

30. Reasonable consumers do not realize the fake nature of the sale. It is not apparent from merely purchasing the Products, because the sale appears to be a bona fide sale. Consumers do not have any reason to go back to the website day after day to discover that there is still a sale. And, even a consumer who occasionally checks the website would reasonably believe that there happened to be another sale—especially when Defendant changes the names of its sales despite offering the same or a similar discount. Discovering Defendant's deception required extensive mining of internet archives, which revealed that the sale is not limited in time, that the discounts are fake, and that the advertised regular prices are fake.

31. In addition, Defendant's website lists fake regular prices (that is, prices reflecting the list price or value of an item) and fake discounts throughout the purchasing process.

32. For example, on September 17, 2025, while running its "Blissy's Fall Sale" promotion, Defendant's homepage advertised its "Best Seller" product, the "Pillowcase – White – Standard," at 25% off: a purported regular price of "$105.95" discounted to "$79.46." (This in addition to another promotion: "Buy 3, Get 1 Free."):




*Captured September 17, 2025*

33. The product pages for Blissy's Products repeat the same fake prices and fake discounts in substantially the same format. For example, the product page for the "Pillowcase – White – Standard" on September 17, 2025 is depicted below:




*Captured September 17, 2025*

34. And, once a Product is selected, the Cart page repeats the same fake prices and fake discounts in substantially the same format. For example, after selecting a "Pillowcase – White – Standard" for purchase on September 17, 2025, the Cart page appears like this:




*Captured September 17, 2025*

35. But the truth is, the listed regular price of $105.95 for the "Pillowcase – White – Standard" that appears on Blissy's homepage, Product page, and Cart page, is not its regular price. Instead, the purported regular price is much lower, because Defendant always offers steep sitewide on all of its Products. As a result, Defendant's

customers did not receive a true 25% discount. They received a much lower discount, or no discount at all.

36. Using these tactics, Defendant leads reasonable consumers to believe that they will get a discount on the Products they are purchasing if they purchase during the limited-time promotion. In other words, it leads reasonable consumers to believe that if they buy now, they will get a Product worth X at a discounted, lower price Y. This creates a sense of urgency: buy now, and you will receive something worth more than you pay for it; wait, and you will pay more for the same thing later.

37. Based on Defendant's advertisements, reasonable consumers reasonably believe that the list prices Defendant advertises are Defendant's regular prices and former prices (that is, the price at which the goods were actually offered for sale on Defendant's website before the limited-time offer went into effect). In other words, reasonable consumers reasonably believe that the list prices Defendant advertises represent the amount that consumers formerly had to pay on Defendant's website for Defendant's goods, before the sale began, and will again have to pay for Defendant's goods when the sale ends. Said differently, reasonable consumers reasonably believe that, prior to the supposedly time-limited sale, and after the sale ends, consumers buying from Defendant on its website had to (or will have to) pay the list price to get the item and did not (or will not) have the opportunity to get a discount from that list price.

38. Reasonable consumers also reasonably believe that the list prices Defendant advertises represent the true market values of the Products, and are the prevailing prices for those Products; and that they are receiving reductions from those listed regular prices in the amounts advertised. In truth, however, Defendant always offers discounts off the purported regular prices it advertises. As a result, everything about Defendant's price and purported discount advertising is false. The list prices Defendant advertises are not actually Defendant's regular or former prices, or the prevailing prices for the Products Defendant sells. And, the list prices do not represent

the true market value for the Products, because Defendant's Products are always available for less than that on Defendant's website, and customers did not have to formerly pay that amount to get those items. The purported discounts Defendant advertises are not the true discount the customer is receiving, and are often not a discount at all. Nor are the purported discounts limited-time—quite the opposite, they are always available.

**B. Defendant's purported regular prices were not the prevailing prices during the 90 days immediately preceding Defendant's advertisement of the purported discounts.**

39. As explained above, Defendant sells its Blissy Products through its website, www.blissy.com. Some Blissy Products are also available through a small number of third-party websites and retailers, including Amazon and Nordstrom Rack.

40. These Blissy Products are consistently available from third-party websites and retailers for prices well below Defendant's listed regular prices. For example, on September 17, 2025, Blissy advertised its standard 20" x 26" white pillowcase as its first listed "Best Seller" product on its website, with a discounted price of $79.46 and a regular list price of $105.95:




*Captured September 17, 2025*

41. On the same day, the same Product was available on Amazon for $54.89, which is less than the supposedly discounted price Defendant was advertising:[2]




*Captured September 17, 2025*

42. Plus, a third-party Amazon price tracker, keepa.com, reveals that in the three months prior to September 17, 2025, the price of the standard-sized Blissy white pillowcase on Amazon was always at or below $79.46—the purportedly discounted price shown on Defendant's website:

---

[2] On the same day, September 17, 2025, standard-sized Blissy pillowcases were also available for $59.47 on Nordstrom Rack's website.




*Captured September 17, 2025*

43. And Google Shopping data (which shows the "typical" price for products over the prior three months based on stores across the Internet) shows that the standard-sized Blissy pillowcase is typically sold by retailers across the web in the range of "$60-$80," which is at or less than the purportedly discounted price of $79.46 appearing on Defendant's website and nowhere near Defendant's advertised regular price of $105.95:




*Captured September 17, 2025*

44. This trend is not limited to the Blissy's standard-sized white pillowcase. It holds true across Blissy's Products. As shown in the chart below, which shows pricing for Blissy's four first listed "Best Sellers," Defendant's products are routinely sold by third-parties like Amazon at or below the purported discounted price shown on Defendant's website, rather than the advertised regular prices:

| Product | Blissy's Advertised Regular Price (9/1725) | Blissy's Advertised Sale Price (9/17/25) | Amazon.com's Price (9/17/25) | Google Shopping Typical Price (3 months preceding 9/17/25) |
|---|---|---|---|---|
| Blissy White Standard Pillowcase | $105.95 | $79.46 | $54.89 | $60-$80 |
| Blissy White Queen Pillowcase | $105.95 | $79.46 | $68.87 | $60-$80 |
| Blissy White King Pillowcase | $109.95 | $82.46 | $82.46 | $62-$94 |
| Blissy Sleep Mask | $49.95 | $37.45 | $27.87 | $20-$40 |

45. In short, as the above shows, Defendant's Products are regularly available from third-party websites and sellers for less than the purported regular prices that Defendant's website advertises. This is not surprising, as prices charged on third-party websites and by third-party retailers typically converge on Defendant's price, especially since the Products are sold in an e-commerce market and Defendant, the manufacturer, sells the Products directly to consumers through its publicly available website.

46. Moreover, regardless of third-party websites' and retailers' prices, Blissy Products are primarily sold through Defendant's branded website, www.blissy.com. If consumers are searching for a Blissy Product, they will go to Defendant's website. For example, if a consumer Googles "Blissy pillowcase," the first sponsored and unsponsored result leads to www.blissy.com. So, because the Blissy Products are most commonly sold on Defendant's website, they are most commonly sold for the discounted prices available on Defendant's website.

47. Moreover, as discussed above, Blissy Products are regularly available on Amazon—one of the world's largest retailers of consumer goods—for far lower prices than Defendant's listed regular prices. Thus, between sales on Defendant's website and Amazon, the Products routinely and predominantly sell for prices below Defendant's purported regular prices, and the listed regular prices are not the prevailing market rates.

**C. Defendant's advertisements are unfair, deceptive, and unlawful.**

48. Section 17500 of California's False Advertising Law prohibits businesses from making statements they know or should know to be untrue or misleading. Cal. Bus. & Prof. Code § 17500. This includes statements falsely suggesting that a product is on sale, when it is not.

49. Moreover, section 17501 of California's False Advertising Law specifically provides that "[n]o price shall be advertised as a former price … unless the

alleged former price was the prevailing market price … within three months next immediately preceding" the advertising. Cal. Bus. & Prof. Code § 17501.

50. In addition, California's Consumer Legal Remedies Act prohibits "advertising goods or services with the intent not to sell them as advertised" and specifically prohibits "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(9), (13).

51. In addition, the Federal Trade Commission's regulations prohibit false or misleading "former price comparisons," for example, making up "an artificial, inflated price … for the purpose of enabling the subsequent offer of a large reduction" off that price. 16 C.F.R. § 233.1. They also prohibit false or misleading "retail price comparisons" and "comparable value comparisons," for example, ones that falsely suggest that the seller is "offer[ing] goods at prices lower than those being charged by others for the same merchandise" when this is not the case. 16 C.F.R. § 233.1.

52. And finally, California's unfair competition law bans unlawful, unfair, and deceptive business practices. *See* Cal. Bus. & Prof. Code § 17200.

53. Here, as described in detail above, Defendant makes untrue and misleading statements about its prices. Defendant advertises regular prices that are not its true regular prices, or its former prices, and were not the prevailing market price in the three months immediately preceding the advertisement. In addition, Defendant advertises goods or services with the intent not to sell them as advertised, for example, by advertising goods having certain former prices and/or market values without the intent to sell goods having those former prices and/or market values. Defendant makes false or misleading statements of fact concerning the reasons for, existence of, and amounts of price reductions, including the existence of steep discounts, and the amounts of price reductions resulting from those discounts. And Defendant engages in unlawful, unfair, and deceptive business practices.

**D. Defendant's advertisements harm consumers.**

54. Based on Defendant's advertisements, reasonable consumers expect that the list prices Defendant advertises are the regular prices at which Defendant usually sells its Products, that these are former prices that Defendant sold its Products at before the time-limited discount was introduced, and that they are the prevailing market prices for the Products.

55. Reasonable consumers also expect that, if they purchase during the sale, they will receive an item whose regular price and/or market value is the advertised list price and that they will receive the advertised discount from the regular purchase price.

56. In addition, consumers are more likely to buy the product if they believe that the product is on sale and that they are getting a product with a higher regular price and/or market value at a substantial discount.

57. Consumers who are presented with discounts are substantially more likely to make a purchase. "Nearly two-thirds of consumers surveyed admitted that a promotion or a coupon often closes the deal, if they are wavering or are undecided on making a purchase." [3] And, "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount," while "80% [of consumers] said they feel encouraged to make a first-time purchase with a brand that is new to them if they found an offer or discount." [4]

58. Similarly, when consumers believe that an offer is expiring soon, the sense of urgency makes them more likely to buy a product. [5]

---

[3] https://www.invespcro.com/blog/how-discounts-affect-online-consumer-buying-behavior/.

[4] RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

[5] https://cxl.com/blog/creating-urgency/ (addition of a countdown timer increased conversion rates from 3.4%-10%); Dynamic email content leads to 400%

59. Thus, Defendant's false advertising harms consumers by depriving them of their reasonable expectations. In addition, Defendant's advertisements harm consumers by inducing them to make purchases based on false information. In addition, by this same mechanism, Defendant's advertisements artificially increase consumer demand for Defendant's Products. This puts upward pressure on the prices that Defendant can charge for its Products. As a result, Defendant can charge a price premium for its Products, that it would not be able to charge absent the misrepresentations described above. So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Products they bought than they otherwise would have.

60. This is deliberate. It is not the case that certain Blissy employees have decided to implement a policy of advertising fake discounts, fake regular and former prices, and fake discounted prices, without authorization from Blissy's officers, directors, or managing agents. Instead, Defendant itself has deliberately adopted a company-wide policy of advertising fake discounts, fake regular and former prices, and fake discounted prices. This discount and price advertising policy is a core element of Blissy's business model and was necessarily created or ratified by Blissy's officers, directors, or managing agents.

**E. Plaintiff was misled by Defendant's misrepresentations.**

61. Plaintiff was misled by Defendant's false and misleading advertising three times: during its purported "Black Friday Sale," "Holiday Sale," and "Anniversary Sale."

62. On November 24, 2023, Ms. Chang bought three king-sized pillowcases (three "Pillowcase – White – King" products) from Defendant's website, www.blissy.com. Per the advertised "25% Off" for the "Black Friday Sale," each

---

increase in conversions for Black Friday email | Adestra (uplandsoftware.com) (400% higher conversation rate for ad with countdown timer).

pillowcase was listed on the website with a regular price of $109.95, discounted to $82.46. And per the advertised “Buy 3 Pillowcases, Get 1 Free” promotion, Ms. Chang received a fourth pillowcase: a “Pillowcase – White – King” product. Also, Defendant advertised an additional 25% off with the BLISSYBFCM2023 coupon code, which was applied to Ms. Chang’s order. Here is Ms. Chang’s order confirmation:







63. On December 10, 2023, Ms. Chang bought three king-sized pillowcases (two “Pillowcase - White – King” products and one “Pillowcase – Champagne – King” product) from Defendant’s website, www.blissy.com. Per the advertised “25% Off” for the “Holiday Sale,” each pillowcase was listed on the website with a regular price of $109.95, discounted to $82.46. And per the advertised “Buy 3 Pillowcases, Get 1 Free” promotion, Ms. Chang received a fourth pillowcase: one “Pillowcase – Champagne – King” product. Also, Defendant advertised an additional 35% off with the BLISSYBFCMVIP coupon code, which was applied to Ms. Chang’s order. Here is Ms. Chang’s order confirmation:




64. On February 29, 2024, Ms. Chang bought three king-sized pillowcases (one "Pillowcase – White – King" product, one "Pillowcase - Champagne – King" product, and one "Pillowcase – Taupe – King" product) from Defendant's website, www.blissy.com. Per the advertised "25% Off" for the "Anniversary Sale," each pillowcase was listed on the website with a regular price of $109.95, discounted to $82.46. And per the advertised "Buy 3 Pillowcases, Get 1 Free" promotion, Ms. Chang received a fourth pillowcase: one "Pillowcase – Champagne – White" product. Also, Defendant advertised an additional 35% off with the HAPPY5VIP coupon code, which was applied to Ms. Chang's order. Here is Ms. Chang's order confirmation:







65. Ms. Chang made each of these purchases while living in Irvine, California. For each of these purchases, Ms. Chang saw and relied on the representations on Blissy's website that she was receiving products with a particular value and/or market price and that she was receiving a price reduction. She would not have purchased the products if she knew that Blissy's products were not discounted as advertised, and that she was not receiving a product with the advertised value and/or market price and was not receiving the advertised discount.

66. When Ms. Chang made each of her purchases, Defendant was advertising a substantial and limited-time sale on its website. For each Product advertised on its website, Defendant included the regular price listed with a strikethrough font next to a discounted price. For Blissy's king size pillows, Defendant included a regular price (with a strikethrough font) of "$~~109.95~~," next to the discounted price that was 25% lower: "$82.46." The site also advertised a limited time offer of "Up to 25% OFF." On top of this, Defendant advertised a "Limited Time Offer" that "Ends Tonight": if you

"Buy 3 Pillowcases," you "Get 1 FREE!" The following screenshots are from Defendant's website, the day before Ms. Chang's first purchase:










*Captured November 22, 2023.*

67. Prior to making her purchases, Ms. Chang reviewed Defendant's website and saw that Defendant was advertising these substantial, time-limited discounts. Ms. Chang read and relied on the representations (like those shown above) on Defendant's website, including that the Products had the regular prices listed on the website in strikethrough font, but were being offered at a discounted sale price from those regular prices, and that the sale was time-limited. Based on Defendant's representations described above, Plaintiff reasonably understood that Defendant usually (and formerly, before the promotion Defendant was advertising) sold the Products she was purchasing at the published regular prices (shown in strikethrough font), that these regular prices were the prevailing price and market value of the Products that she was buying, that

she was receiving the advertised discounts as compared to the regular prices, that advertised discounts were only available for a limited time (during the limited time promotion), and that the products would go back to retailing for the published regular prices when the promotion ended. She would not have made the purchases if she had known that the Products were not discounted as advertised, and that she would not be receiving the advertised discounts.

68. In reality, as explained above, Blissy Products, including the Products that Plaintiff purchased, are regularly available at a discount from the purported regular prices. In other words, Defendant did not regularly sell the Products that Plaintiff purchased at the purported regular prices, and the Products were not discounted as advertised. Plus, the sales were not limited time—Defendant's products are regularly on sale.

69. The same purported discounts persisted on Defendant's website. For example, after Ms. Chang's November 23, 2023 purchase, the Products continued to be listed with a purported regular strikethrough price next to a discounted price. For Blissy's king size pillows, Defendant continued to include a regular price of "$109.95," next to the discounted price of "$82.46." And the "BLACK FRIDAY SALE" with a limited time offer of "Up to 25% OFF" also remained on the website. And so did the purported "Limited Time Offer" that "Ends Tonight": if you "Buy 3 Pillowcases," you "Get 1 FREE!" Based on available pages from the Wayback Machine, these promotions appeared on Defendant's website on November 25, 2023; November 26, 2023; November 27, 2023; November 28, 2023; November 29, 2023. They were not a "Limited Time Offer" and they did not "End[] Tonight."

70. And then, once the date became too far removed from Black Friday to still call it a Black Friday Sale, Defendant simply changed the name of the sale, but kept it the same. For example, by December 6, 2023, Defendant had re-named it a "Cyber Monday Sale." The Products continued to be listed with a purported regular strikethrough price next to a discounted price. And it continued the same purportedly

limited time offer of "Up to 25% OFF." It also continued to advertise the "Limited Time Offer" that "Ends Tonight": if you "Buy 3 Pillowcases," you "Get 1 FREE!":







*Captured December 7, 2023.*

71. "Blissy's Cyber Monday Sale" with the same discounts shown above—the same strikethrough price discounts, the same "25% OFF" offer, and the same "Limited Time Offer" that purportedly "Ends Tonight" (buy 3, get one free)—remained on Defendant's website until it became too far removed from Cyber Monday to still call it a Cyber Monday Sale. Defendant once again simply changed the name of the sale, but kept it the same. For example, by December 28, 2023, Defendant re-named the sale as "Blissy's Holiday Sale."










*Captured December 28, 2023.*

72. Once it became too far removed from the holidays to still call it a "Holiday Sale," Defendant once again simply changed the name of the sale, but kept the same promotions available. For example, it became the Valentines Day Sale, then the Anniversary Sale, then the Fourth of July Sale, and so on.

73. Plaintiff faces an imminent threat of future harm. She would purchase additional Blissy Products in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. For example, while she could watch Defendant's website for a sale on the day that it is supposed to end to see if the sale is permanent, doing so could result in missing out on the sale (*e.g.*, if the sale is actually limited in time, and not permanent). Accordingly, Plaintiff is unable to rely on Defendant's advertising in the future, and so she cannot purchase the Products that she would like to purchase.

**F. Defendant breached its contract with and warranties to Plaintiff and the putative class.**

74. When Plaintiff, and other members of the putative class, purchased and paid for Blissy Products that they bought as described above, they accepted offers that Defendant made, and thus, a contract was formed each time that they made purchases. Each offer was to provide Products having a particular listed regular price and market value, and to provide those Products at the advertised discounted price.

75. Defendant's advertisements, for example on its website, and in its price quotations, list the market value of the items that Defendant promised to provide (which, for Plaintiff, are detailed above). Defendant agreed to provide a discount equal to the difference between the regular prices, and the prices paid by Plaintiff and the putative class. For example, in each transaction, Defendant offered to provide Ms. Chang with (among other things) three king-sized Blissy pillowcases, each with a market value of $109.95, discounted to a lower price.

76. Defendant also warranted that the regular price and market value of the Products Plaintiff purchased were the advertised list prices and warranted that Plaintiff was receiving a specific discount on the Products.

77. The regular price and market value of the items Plaintiff and putative Class members would receive, and the amount of the discount they would be provided off the regular price of those items, were specific and material terms of the contract. They were also affirmations of fact about the Products and a promise relating to the goods.

78. Plaintiff and other members of the putative class performed their obligations under the contract by paying for the items they purchased.

79. Defendant breached its contract by failing to provide Plaintiff and other members of the putative class with Products that have a regular price and market value equal to the regular price displayed, and by failing to provide the discount it promised. Defendant also breached warranties for the same reasons.

**G. No adequate remedy at law.**

80. Plaintiff seeks damages and, in the alternative, restitution. Plaintiff is permitted to seek equitable remedies in the alternative because she has no adequate remedy at law.

81. A legal remedy is not adequate if it is not as certain as an equitable remedy. The elements of Plaintiff's equitable claims are different and do not require the same showings as Plaintiff's legal claims. For example, Plaintiff's FAL claim under Section 17501 (an equitable claim) is predicated on a specific statutory provision, which prohibits advertising merchandise using a former price if that price was not the prevailing market price within the past three months. Cal. Bus. & Prof. Code § 17501. Plaintiff may be able to prove these more straightforward factual elements, and thus prevail under the FAL, while not being able to prove one or more elements of her legal claims.

82. In addition, to obtain a full refund as damages, Plaintiff must show that the Products she bought have essentially no market value. In contrast, Plaintiff can seek restitution without making this showing. This is because Plaintiff purchased Products that she would not otherwise have purchased, but for Defendant's representations. Obtaining a full refund at law is less certain than obtaining a refund in equity.

83. Furthermore, the remedies at law available to Plaintiff are not equally prompt or otherwise efficient. The need to schedule a jury trial may result in delay. And a jury trial will take longer, and be more expensive, than a bench trial.

84. Finally, legal damages are inadequate to remedy the imminent threat of future harm that Plaintiff faces. Only an injunction can remedy this threat of future harm. Plaintiff would purchase or consider purchasing Products from Defendant again in the future if she could feel sure that Defendant's regular prices accurately reflected Defendant's former prices and the market value of the Products, and that its discounts were truthful. But without an injunction, Plaintiff has no realistic way to know

which—if any—of Defendant's regular prices, discounts, and sales are not false or deceptive. Thus, Plaintiff is unable to rely on Defendant's advertising in the future, and so cannot purchase the Blissy Products she would like to purchase.

## V. Class Action Allegations.

85. Plaintiff brings the asserted claims on behalf of the proposed class of:

- Nationwide Class: all persons who, within the applicable statute of limitations period, purchased one or more Blissy Products advertised at a discount on Defendant's website.
- California Subclass: all persons who, while in the state of California and within the applicable statute of limitations period, purchased one or more Blissy Products advertised at a discount on Defendant's website.

86. The following people are excluded from the proposed Class and Subclass: (1) any Judge or Magistrate Judge presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel, and their experts and consultants; and (6) the legal representatives, successors, and assigns of any such excluded persons.

***Numerosity & Ascertainability***

87. The proposed class contains members so numerous that separate joinder of each member of the class is impractical. There are tens or hundreds of thousands of class members.

88. Class members can be identified through Defendant's sales records and public notice.

***Predominance of Common Questions***

89. There are questions of law and fact common to the proposed class. Common questions of law and fact include, without limitation:

(1) whether Defendant made false or misleading statements of fact in its advertisements;

(2) whether Defendant violated California's consumer protection statutes;

(3) whether Defendant committed a breach of contract;

(4) whether Defendant committed a breach of an express warranty;

(5) damages needed to reasonably compensate Plaintiff and the proposed class.

***Typicality & Adequacy***

90. Plaintiff's claims are typical of the proposed class. Like the proposed class, Plaintiff purchased Blissy Products advertised at a discount. There are no conflicts of interest between Plaintiff and the class.

***Superiority***

91. A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of thousands of individual claims in separate lawsuits, every one of which would present the issues presented in this lawsuit.

## VI. Claims.

### <u>First Cause of Action</u>:

### Violation of California's False Advertising Law Bus. & Prof. Code §§ 17500 & 17501 et seq.

### (By Plaintiff and the California Subclass)

92. Plaintiff incorporates each and every factual allegation set forth above.

93. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

94. Defendant has violated sections 17500 and 17501 of the Business and Professions Code.

95. Defendant has violated, and continues to violate, section 17500 of the Business and Professions Code by disseminating untrue and misleading advertisements to Plaintiff and class members.

96. As alleged more fully above, Defendant advertises former prices along with discounts. Defendant does this, for example, by crossing out a higher price (*e.g.*, ~~$109.95~~) and displaying it next to a lower, discounted price. Reasonable consumers would understand prices advertised in strikethrough font from which time-limited discounts are calculated to denote "former" prices (i.e., the prices that Defendant charged before the time-limited discount went into effect.).

97. The prices advertised by Defendant are not Defendant's regular prices. Those prices are not Defendant's regular prices (i.e., the price you usually have to pay to get the Product in question), because there is consistently a heavily-advertised promotion ongoing entitling consumers to a discount. Moreover, for the same reasons, those prices were not the former prices of the Products. Accordingly, Defendant's statements about the former prices of its Products, and its statements about its discounts from those former prices, were untrue and misleading. In addition, Defendant's statements that its discounts are limited in time (such as representations that a sale is time-limited or will end on a specific date) are false and misleading too.

98. In addition, Defendant has violated, and continues to violate, section 17501 of the Business and Professions Code by advertising former prices that were not the prevailing market price within three months next immediately preceding the advertising. As explained above, Defendant's advertised regular prices, which reasonable consumers would understand to denote former prices, were not the prevailing market prices for the Products within three months preceding publication of the advertisement. And Defendant's former price advertisements do not state clearly, exactly, and conspicuously when, if ever, the former prices prevailed. Defendant's

advertisements do not indicate whether or when the purported former prices were offered at all.

99. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on the statements when purchasing Blissy Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchasing decision.

100. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy Blissy Products.).

101. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the Class.

102. Decisions regarding the pricing and discount policies of Defendant's Products are significant decisions that directly impact revenue and are inherently tied to corporate policy. Thus, these decisions were made with the direction of or ratification by Defendant's officers, directors, or managing agents. In other words, Defendant's officers, directors, or managing agents knew about and authorized the deceptive pricing representations and intended that Plaintiff and class members rely on them.

103. Plaintiff and the Class were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the truth, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

104. For the claims under California's False Advertising Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the California Subclass as a result of Defendant's unlawful conduct.

**<u>Second Cause of Action</u>:**

**Violation of California's Consumer Legal Remedies Act**

**(By Plaintiff and the California Subclass)**

105. Plaintiff incorporates each and every factual allegation set forth above.

106. Plaintiff brings this cause of action on behalf of themselves and members of the California Subclass.

107. Plaintiff and the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d).

108. Plaintiff and the California Subclass have engaged in "transactions" with Defendant as that term is defined by California Civil Code § 1761(e).

109. The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

110. As alleged more fully above, Defendant made and disseminated untrue and misleading statements of facts in its advertisements to Class members. Defendant did this by using fake regular prices, i.e., regular prices that are not the prevailing prices, and by advertising fake discounts.

111. Defendant violated, and continues to violate, section 1770 of the California Civil Code.

112. Defendant violated, and continues to violate, section 1770(a)(5) of the California Civil Code by representing that Products offered for sale have characteristics or benefits that they do not have. Defendant represents that the value of its Products is greater than it actually is by advertising inflated regular prices and fake discounts for Products.

113. Defendant violated, and continues to violate, section 1770(a)(9) of the California Civil Code. Defendant violates this by advertising its Products as being

offered at a discount, when in fact Defendant does not intend to sell the Products at a discount.

114. And Defendant violated, and continues to violate section 1770(a)(13) by making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, including by (1) misrepresenting the regular price of Products, (2) advertising discounts and savings that are exaggerated or nonexistent, (3) misrepresenting that the discounts and savings are unusually large, when in fact they are regularly available, and (4) misrepresenting the reason for the sale (*e.g.*, "Anniversary Sale" when in fact Defendant has ongoing sales).

115. Defendant's representations were likely to deceive, and did deceive, Plaintiff and reasonable consumers. Defendant knew, or should have known through the exercise of reasonable care, that these statements were inaccurate and misleading.

116. Defendant's misrepresentations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Blissy Products. Defendant's misrepresentations were a substantial factor in Plaintiff's purchasing decision.

117. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Blissy Products.

118. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Subclass.

119. Decisions regarding the pricing and discount policies of Defendant's Products are significant decisions that directly impact revenue and are inherently tied to corporate policy. Thus, these decisions were made with the direction of or ratification by Defendant's officers, directors, or managing agents. In other words, Defendant's officers, directors, or managing agents knew about and authorized the deceptive pricing representations and intended that Plaintiff and class members rely on them.

120. Plaintiff and the California Subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

121. Accordingly, pursuant to California Civil Code § 1780(a)(2), Plaintiff, on behalf of herself and all other members of the California Subclass, seeks injunctive relief.

122. CLRA § 1782 NOTICE. On September 11, 2025, a CLRA demand letter on behalf of Ms. Chang was sent to Defendant's California headquarters via certified mail (return receipt requested). The letter provided notice of Defendant's violations of the CLRA and demanded that Defendant correct the unlawful, unfair, false and/or deceptive practices alleged here. Defendant did not fully correct the problem for Plaintiff and for each member of the Class within 30 days of receipt. Plaintiff previously sought only injunctive relief under the CLRA. As expressly allowed by the CLRA, Plaintiff now amends and seeks all monetary remedies available under the CLRA, including damages and attorneys' fees. See Cal. Civ. Code § 1782(d) ("An action for injunctive relief … may be commenced without [notice]" and after the notice period elapses the "consumer may amend his or her complaint without leave of court to include a request for damages.").

123. Plaintiff previously filed a CLRA venue declaration. *See* Dkt. 1-1.

**<u>Third Cause of Action</u>:**

**Violation of California's Unfair Competition Law**

**(By Plaintiff and the California Subclass)**

124. Plaintiff incorporates each and every factual allegation set forth above.

125. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

126. Defendant has violated California's Unfair Competition Law (UCL) by engaging in unlawful, fraudulent, and unfair conduct (i.e., violating each of the three prongs of the UCL).

***The Unlawful Prong***

127. Defendant engaged in unlawful conduct by violating the CLRA and FAL, as alleged above and incorporated here. In addition, Defendant engaged in unlawful conduct by violating the Federal Trade Commission Act (FTCA). The FTCA prohibits "unfair or deceptive acts or practices in or affecting commerce" and prohibits the dissemination of false advertisements. 15 U.S.C. § 45(a)(1), 15 USC § 52(a). As the FTC's regulations make clear, Defendant's false pricing schemes violate the FTCA. 16 C.F.R. § 233.1

***The Deceptive Prong***

128. As alleged in detail above, Defendant's representations that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts were false and misleading.

129. Defendant's representations were misleading to Plaintiff and other reasonable consumers.

130. Plaintiff relied upon Defendant's misleading representations and omissions, as detailed above.

***The Unfair Prong***

131. As alleged in detail above, Defendant committed "unfair" acts by falsely advertising that its Products were on sale, that the sale was limited in time, that the Products had a specific regular price, and that the customers were receiving discounts.

132. Defendant violated established public policy by violating the CLRA, FAL, and FTCA, as alleged above and incorporated here. The unfairness of this

practice is tethered to a legislatively declared policy (that of the CLRA, FAL, and FTCA).

133. The harm to Plaintiff and the California Subclass greatly outweighs the public utility of Defendant's conduct. There is no public utility to misrepresenting the price of a consumer product. This injury was not outweighed by any countervailing benefits to consumers or competition. Misleading consumer products only injure healthy competition and harm consumers.

134. Plaintiff and the California Subclass could not have reasonably avoided this injury. As alleged above, Defendant's representations were deceptive to reasonable consumers like Plaintiff.

135. Defendant's conduct, as alleged above, was immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

* * *

136. For all prongs, Defendant's representations were intended to induce reliance, and Plaintiff saw, read, and reasonably relied on them when purchasing Blissy Products. Defendant's representations were a substantial factor in Plaintiff's purchasing decision.

137. In addition, class-wide reliance can be inferred because Defendant's representations were material (i.e., a reasonable consumer would consider them important in deciding whether to buy Blissy Products.).

138. Defendant's representations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and the California Subclass members.

139. Decisions regarding the pricing and discount policies of Defendant's Products are significant decisions that directly impact revenue and are inherently tied to corporate policy. Thus, these decisions were made with the direction of or ratification by Defendant's officers, directors, or managing agents. In other words, Defendant's officers, directors, or managing agents knew about and authorized the

deceptive pricing representations and intended that Plaintiff and subclass members rely on them.

140. Plaintiff and the California Subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known the discounts and/or regular prices were not real, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received products with market values lower than the promised market values.

141. For the claims under California's Unfair Competition Law, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in the form of a full refund and/or measured by the price premium charged to Plaintiff and the California Subclass as a result of Defendant's unlawful conduct.

**Fourth Cause of Action:**

**Breach of Contract**

**(By Plaintiff and the Nationwide Class)**

142. Plaintiff incorporates each and every factual allegation set forth above.

143. Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

144. Plaintiff and class members entered into contracts with Blissy when they placed orders to purchase Products.

145. The contracts provided that Plaintiff and class members would pay Blissy for the Products ordered.

146. The contracts further required that Blissy provide Plaintiff and class members with Products that have a market value equal to the advertised list prices. They also required that Blissy provide Plaintiff and the class members with the discount advertised. These were specific and material terms of the contract.

147. The specific discounts were a specific and material term of each contract, and were displayed to Plaintiff and class members at the time they placed their orders.

148. Plaintiff and class members paid Blissy for the Products they ordered, and satisfied all other conditions of their contracts.

149. Blissy breached the contracts with Plaintiff and class members by failing to provide Products that had a prevailing market value equal to the list price, and by failing to provide the promised discount. Blissy did not provide the discount that Blissy had promised.

150. Plaintiff brings this claim under the laws of the State of California.

151. California, the state where Blissy maintains its headquarters, has a stronger interest than any other state in enforcing this contract claim. The terms of the contracts were not individually negotiated between Blissy and the purchasers. Instead, the terms of the contracts were determined by Blissy from its California headquarters. The advertised list price, the discount, and the discounted price charged were all determined by Blissy in California. And the decision to display the advertised list price, discount, and discounted price on its website were all made by Blissy in California.

152. Plaintiff provided Defendant with notice of this breach, by mailing notice letters to Defendant's registered agent and California headquarters on September 11, 2025.

153. As a direct and proximate result of Defendant's breaches, Plaintiff and class members were deprived of the benefit of their bargained-for exchange, and have suffered damages in an amount to be established at trial.

154. For the breach of contract claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the other class members as a result of Defendant's unlawful conduct.

**<u>Fifth Cause of Action</u>:**

**Breach of Express Warranty**

**(By Plaintiff and the Nationwide Class)**

155. Plaintiff incorporates each and every factual allegation set forth above.

156. Plaintiff brings this cause of action on behalf of herself and the Nationwide Class. In the alternative, Plaintiff brings this cause of action on behalf of herself and the California Subclass.

157. Defendant, as the manufacturer, marketer, distributor, supplier, and/or seller of Blissy Products, issued material, written warranties by advertising that the Products had a prevailing market value equal to the list price. This was an affirmation of fact about the Products (i.e., a representation about the market value) and a promise relating to the goods.

158. This warranty was part of the basis of the bargain and Plaintiff and members of the class relied on this warranty.

159. In fact, Blissy Products' stated market values were not the prevailing market values. Thus, the warranty was breached.

160. Plaintiff brings this claim under the laws of the State of California.

161. California, the state where Blissy maintains its headquarters, has a stronger interest than any other state in enforcing this warranty claim. The written material warranties at issue in this claim were determined and issued by Blissy from its California headquarters.

162. Plaintiff provided Defendant with notice of this breach of warranty, by mailing notice letters to Defendant's registered agent and California headquarters on September 11, 2025.

163. Plaintiff and the class were injured as a direct and proximate result of Defendant's breach, and this breach was a substantial factor in causing harm, because (a) they would not have purchased Products if they had known that the warranty was false, (b) they overpaid for the Products because the Products were sold at a price

premium due to the warranty, and/or (c) they did not receive the Products as warranted that they were promised.

164. For their breach of express warranty claims, Plaintiff seeks all damages available including expectation damages and/or damages measured by the price premium charged to Plaintiff and the other class members as a result of Defendant's unlawful conduct.

**<u>Sixth Cause of Action</u>:**

**Quasi-Contract/Unjust Enrichment**

**(By Plaintiff and the California Class)**

165. Plaintiff incorporates paragraphs 1-73, 80-91 above.

166. Plaintiff brings this cause of action in the alternative to her Breach of Contract and Breach of Warranty claims (Counts Four and Five) on behalf of herself and the California Subclass.

167. As alleged in detail above, Defendant's false and misleading advertising caused Plaintiff and the class to purchase Blissy Products and to pay a price premium for these Products. Defendant's false and misleading advertising artificially increases consumer demand for Blissy Products, which puts upward pressure on the prices that Defendant can charge for its Products and allows Defendant to charge a price premium for its Products. So, due to Defendant's misrepresentations, Plaintiff and the class paid more for the Blissy Products they bought than they otherwise would have (or, in other words, paid a price premium.

168. In this way, Defendant received a direct and unjust benefit, at Plaintiff's expense.

169. (In the alternative only), due to Defendant's misrepresentations, its contracts with Plaintiff and other class members are void or voidable.

170. Plaintiff and the class seek restitution, and in the alternative, rescission.

171. For the quasi-contract/unjust enrichment claims, Plaintiff seeks all available equitable relief, including injunctive relief, disgorgement, and restitution in

the form of a full refund and/or measured by the price premium charged to Plaintiff and the class as a result of Defendant's unlawful conduct.

**Seventh Cause of Action:**

**Negligent Misrepresentation**

**(By Plaintiff and the California Subclass)**

172. Plaintiff incorporates each and every factual allegation set forth above.

173. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

174. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and class members concerning the existence and/or nature of the discounts and savings advertised.

175. These representations were false.

176. When Defendant made these misrepresentations, it knew or should have known that they were false. Defendant had no reasonable grounds for believing that these representations were true when made.

177. Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class Members read and reasonably relied on them.

178. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Blissy Products.

179. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

180. Plaintiff and the California Subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and/or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

181. For the negligent misrepresentation claim, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the California Subclass as a result of Defendant's unlawful conduct.

**Eighth Cause of Action:**

**Intentional Misrepresentation**

**(By Plaintiff and the California Subclass)**

182. Plaintiff incorporates each and every factual allegation set forth above.

183. Plaintiff brings this cause of action on behalf of herself and members of the California Subclass.

184. As alleged more fully above, Defendant made false representations and material omissions of fact to Plaintiff and class members concerning the existence and/or nature of the discounts and savings advertised.

185. These representations were false.

186. When Defendant made these misrepresentations, it knew that they were false at the time that it made them and/or acted recklessly in making the misrepresentations.

187. Defendant intended that Plaintiff and class members rely on these representations and Plaintiff and class members read and reasonably relied on them.

188. In addition, class-wide reliance can be inferred because Defendant's misrepresentations were material, i.e., a reasonable consumer would consider them important in deciding whether to buy Blissy Products.

189. Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and class members.

190. Decisions regarding the pricing and discount policies of Defendant's Products are significant decisions that directly impact revenue and are inherently tied to corporate policy. Thus, these decisions were made with the direction of or ratification by Defendant's officers, directors, or managing agents. In other words,

Defendant's officers, directors, or managing agents knew about and authorized the deceptive pricing representations and intended that Plaintiff and subclass members rely on them.

191. Plaintiff and the California Subclass were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased the Products if they had known that the representations were false, (b) they overpaid for the Products because the Products were sold at a price premium due to the misrepresentation, and /or (c) they did not receive the discounts they were promised, and received Products with market values lower than the promised market values.

192. For the intentional misrepresentation claim, Plaintiff seeks all damages available including expectation damages, punitive damages, and/or damages measured by the price premium charged to Plaintiff and the California Subclass as a result of Defendant's unlawful conduct.

## VII. Relief.

193. Plaintiff seeks the following relief for herself and the class:

- An order certifying the asserted claims, or issues raised, as a class action;
- A judgment in favor of Plaintiff and the proposed class;
- Damages, treble damages, and punitive damages where applicable;
- Restitution;
- Disgorgement, and other just and equitable relief;
- Pre- and post-judgment interest;
- An injunction prohibiting Defendant's deceptive conduct, as allowed by law;
- Reasonable attorneys' fees and costs, as allowed by law;
- Any additional relief that the Court deems reasonable and just.

## **Demand For Jury Trial**

194. Plaintiff demands the right to a jury trial on all claims so triable.

Dated: December 19, 2025

Respectfully submitted,

By: <u>/s/ *Rick Lyon*</u>

Rick Lyon (Cal. Bar No. 229288)
rick@dovel.com
Simon Franzini (Cal. Bar No. 287631)
simon@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, California 90401
Telephone: (310) 656-7066
Facsimile: +1 (310) 656-7069

*Attorneys for Plaintiff*